# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Weber v. Winnebago County Officers Electoral Board, 2012 IL App (2d) 120051**

---

| | |
|---|---|
| Appellate Court Caption | GLEN R. WEBER, Plaintiff-Appellant, v. WINNEBAGO COUNTY OFFICERS ELECTORAL BOARD, JOSEPH P. BRUSCATO, and DAVID M. GILL, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-12-0051 |
| Filed | February 24, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant electoral board's denial of plaintiff's objections to the nomination petitions filed by defendants for places on a primary ballot for the office of State's Attorney based on their violations of section 7-10 of the Election Code, the appellate court affirmed the trial court's decision striking the petition against the first defendant on the ground that defendant's use of the form language in the statute constituted substantial compliance with section 7-10 and the appellate court affirmed the board's denial of the petition against the second defendant on the ground that plaintiff had no right to amend the petition to correct a misidentification of the ballot to which defendant sought access, and without the amendment, the petition sought nonsensical relief. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, Nos. 12-MR-6, 12-MR-33; the Hon. Brian D. Shore, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Glen R. Weber, of Brassfield, Krueger & Ramlow, Ltd., of Rockford, for appellant.

Robert C. Pottinger and Aaron N. Szeto, both of Barrick, Switzer, Long, Balsley & Van Evera, LLP, of Rockford, for appellee Joseph P. Bruscato.

Ian K. Linnabary and Jeffrey H. Powell, both of Reno & Zahm LLP, of Rockford, for appellee David M. Gill.

Panel

JUSTICE BIRKETT delivered the judgment of the court, with opinion.

Justices McLaren and Hutchinson concurred in the judgment and opinion.

**OPINION**

¶ 1   Plaintiff, Glen R. Weber, appeals the trial court's order affirming the decision of the Winnebago County Officers Electoral Board (Board) denying plaintiff's objection to the petition for nomination filed by defendant David M. Gill. Plaintiff also appeals the trial court's order reversing the decision of the Board denying the motion of defendant Joseph P. Bruscato to strike plaintiff's objection to Bruscato's nominating petition. For the reasons stated below, we affirm the trial court's judgments.

¶ 2                                    BACKGROUND

¶ 3   We note at the outset that Gill has filed a motion to correct a typographical error on page 16 of his appellee's brief. We grant that motion. Additionally, the Board has filed a motion to join in Gill's appellee's brief. Bruscato has filed his own brief, but the Board states in its motion that it takes no position on Bruscato's arguments. We grant the motion of the Board to join in Gill's brief.

¶ 4   We proceed to the background facts. On December 12, 2011, plaintiff filed two objector's petitions pursuant to section 10-8 of the Election Code (10 ILCS 5/10-8 (West 2010)). The petitions challenged, respectively, the statements of candidacy filed by Bruscato and Gill for nomination as party candidate for Winnebago County State's Attorney. Each statement of candidacy was in the following form:

"I, _____ (Name of Candidate) being first duly sworn (or affirmed), say that I reside at _____, in the City[,] Village, Unincorporated Area (circle one) of _____ (if unincorporated, list municipality that provides postal service) Zip Code _____, in the County of _____, State of Illinois; that I am a qualified voter therein and am a qualified Primary voter of the _____ Party; that I am a candidate for Nomination/Election to the office of _____ in the _____ District, to be voted upon at the primary election to be held

-2-

on _____, (date of election) and that I am legally qualified (*including being the holder of any license that may be an eligibility requirement for the office to which I seek the nomination*) to hold such office and that I have filed (or I will file before the close of the petition filing period) a Statement of Economic Interests as required by the Illinois Governmental Ethics Act and I hereby request that my name be printed upon the official _____ (Name of Party) Primary ballot for Nomination/Election for such office." (Emphasis added.)

(The emphasized language is the subject of this appeal, as will be explained shortly.) In the blank for "Name of Party," Bruscato wrote "Democratic" and Gill "Republican."

¶ 5    Plaintiff's objector's petitions asserted that both statements of candidacy failed to comply with section 7-10 of the Election Code (10 ILCS 5/7-10 (West 2010)) because neither Gill nor Bruscato represented that he possessed an Illinois law license when he filed his nominating petition. Plaintiff noted that section 7-10 provides that a statement of candidacy "shall state that the candidate *** is qualified for the office specified (in the case of a candidate for State's Attorney it shall state that the candidate is at the time of filing such statement a licensed attorney-at-law of this State)." 10 ILCS 5/7-10 (West 2010). Each objector's petition requested as relief that the named individual not appear on the ballot for nomination as the party candidate. The petition against Bruscato requested that he not appear on the "primary ballot for nomination as a *Republican* candidate for State's Attorney of Winnebago County" (emphasis added), yet Bruscato's statement of candidacy requested that he appear on the "Democratic" ballot. It was on this ground that Bruscato subsequently moved to strike the objector's petition against him.

¶ 6    On December 19, 2011, the Board held a hearing on the objector's petitions and on Bruscato's motion to strike. Plaintiff made an oral motion "to amend" his petition against Bruscato to state that the relief sought was that Bruscato not appear on the ballot for nomination as a Democratic candidate. Subsequently, the Board issued a written decision. As an initial matter, the Board denied plaintiff's motion to amend, reasoning that "the Election Code does not grant [the] Board authority to allow amendment to Petitions or other documents once filed with the County Clerk." However, the Board characterized plaintiff's inaccurate representation of Bruscato's party status as "an inadvertent scrivener's error" that was "*de minimis* and should be disregarded by [the] Board." Accordingly, the Board denied Bruscato's motion to strike.

¶ 7    Proceeding to address the objector's petitions on their merits, the Board denied both petitions, reasoning that each statement of candidacy "sufficiently recites that the Candidate is licensed as required by the law and also adequately sets out the statement thereof as required by section 7-10 of the Election Code."[1]

¶ 8    Plaintiff filed an action in the trial court for judicial review. The court held a hearing on January 12, 2012, and later issued a written decision. The trial court agreed with the Board

---

[1] The "statement" to which the Board alluded was, presumably, the model form that section 7-10 provides for statements of candidacy. We quote the relevant portions of that form below, *infra* ¶ 19.

that the Election Code did not allow plaintiff to amend his petition against Bruscato. The court disagreed with the Board, however, that the misidentification of Bruscato's party was *de minimis*, rather finding it "substantial." Thus the court refused to overlook the misidentification. Determining that the petition, as presently worded, sought relief that was "irrelevant," the court struck the petition. Thus the court reached the merits only of the petition against Gill. On that issue, the court noted that the petition followed the form language provided in section 7-10 itself. The court acknowledged that the form language contains only a general statement that all licensing requirements for candidacy are met, whereas section 7-10 elsewhere states that candidates for State's Attorney must represent that they have Illinois law licenses. The court said: "[T]he use of the form language was, quite arguably, not strict compliance with the statute, though the statute is poorly drafted to include specific language in the same sentence as the provided form containing the more general language." The court ultimately concluded that Gill's use of the form language constituted substantial compliance with section 7-10 and that this sufficed under the law.

¶ 9        Plaintiff filed a timely appeal from the decision of the trial court.


¶ 10                              ANALYSIS

¶ 11       Plaintiff challenges both the striking of his objector's petition against Bruscato and the denial on the merits of his petition against Gill. We address first the striking of the petition against Bruscato.

¶ 12       Generally, an administrative agency's decisions regarding the conduct of its hearings are reviewed for an abuse of discretion. *Wilson v. Department of Professional Regulation*, 344 Ill. App. 3d 897, 907 (2003).

¶ 13       Section 10-8 of the Election Code (10 ILCS 5/10-8 (West 2010)) requires that any objections to nominating papers be "made in writing within 5 business days after the last day for filing *** nominating papers." Section 10-8 contains no provision for amendments to objections. In *Siegel v. Lake County Officers Electoral Board*, 385 Ill. App. 3d 452, 456 (2008), this court, citing prior cases, maintained that "[t]he Election Code does not allow parties to file amendments to their objectors' petitions." More precisely, amendments are not permitted after the time for filing objections has expired. This was the rule implied in *Stein v. Cook County Officers Electoral Board*, 264 Ill. App. 3d 447 (1994), to which, in the string of precedent, the rule in *Siegel* can be traced. In *Stein*, the appellate court held that the Board was correct to deny the motion of one of the petitioners to amend his objections to adopt the objections of his fellow petitioner. The amendment was not permitted, the court said, because the time for filing objections had passed. *Id.* at 449.

¶ 14       The parties make no representation as to what date the nominating papers were due, and we cannot ascertain that date from our review of the record. Plaintiff claims not that his proposed amendment was timely but, rather, that the amendment should have been permitted because it was insubstantial. On this point, plaintiff cites *Siegel*. In *Siegel*, the petitioner, seeking to fill a vacancy in nomination, filed a statement of candidacy as well as a resolution of the " 'County Board Committee for the Democratic Party for the 20th District' (District Committee)." *Siegel*, 385 Ill. App. 3d at 453. The resolution stated that, on April 6, 2008, the

District Committee convened a meeting and appointed the petitioner to fill the vacancy. The resolution was prepared and notarized by Nancy Shepherdson, and the jurat stated that the notarization occurred on April 6, 2008. The respondents filed an objectors' petition claiming that the purported District Committee meeting "(1) was never properly assembled, and (2) never occurred at all." *Id.* The petitioner responded with a motion to strike and dismiss the objection. The petitioner attached an affidavit from Shepherdson, who averred that the meeting had in fact occurred on April 5 (not April 6), 2008, that she was present and prepared the nominating papers, and that she mistakenly wrote the wrong date on the resolution. In their response to the motion to strike and dismiss, the respondents asserted that the resolution was facially invalid because it did not reflect the true date of the meeting. See 10 ILCS 5/7-61 (West 2010) ("[t]he resolution to fill a vacancy in nomination *** shall include, upon its face *** the name and address of the nominee selected to fill the vacancy and the date of selection"). The petitioner replied that the respondents had waived their specific claim that the resolution was facially invalid and that their attempt now to assert it was tantamount to a proposed amendment, the time for which under section 10-8 had passed. *Siegel*, 385 Ill. App. 3d at 454.

¶ 15    The Board agreed with the respondents that they had not waived their objection to the facial invalidity of the resolution. The Board determined that this later claim was, together with the earlier assertion that the meeting had never occurred, part of the same overarching objection "to the manner of petitioner's selection by the District Committee." *Id.* This court in turn agreed with the Board and held that the respondent's reply to the motion to strike and dismiss did not constitute an amendment. We reasoned:

> "In the present case, respondents claimed that the District Committee meeting was never properly assembled and never occurred at all. The resolution reflected that the District Committee validly assembled on April 6, 2008, to fill the vacancy in nomination. Had the Board simply gone forth with the hearing on respondents' objection at this stage, without considering the subsequent motions, the evidence at the hearing would have revealed that no such meeting did in fact occur on April 6, 2008, as set forth in the resolution. When respondents responded to petitioner's motion to strike and dismiss by specifically alleging that the resolution did not reflect the true date of the meeting, they did not create a new objection but, rather, crafted a more precise argument regarding their objection.
>
> Respondents' objection pertaining to the occurrence of the District Committee meeting was sufficient to include the specific objection pertaining to the true date of the meeting." *Id.* at 457.

¶ 16    Plaintiff maintains that, by amending the petition against Bruscato to reflect the proper political party whose nomination Bruscato sought, he would not be making a new objection but, rather, would be refining his current objection by correcting a "scrivener's error." We decline to extend the rule in *Siegel* to the factual situation at hand. In *Siegel*, there was this exchange of argument: (1) the respondents initially argued that the District Committee meeting either was never properly assembled or never occurred at all; (2) the petitioner replied that the meeting indeed took place, but not on the date indicated on the resolution; (3) the respondents in turn asserted that the resolution was facially invalid for specifying the

-5-

wrong date of the petitioner's selection. The *Siegel* court viewed this as the give-and-take of advocacy in which the respondents adjusted their legal contentions to account for the petitioner's legal position, with the modified position still falling (as the *Siegel* court determined) under the umbrella of the original challenge. Here, Bruscato's motion to strike prompted plaintiff to correct a factual misrepresentation rather than to adjust his legal argument. Indeed, the proposed amendment would not have refined plaintiff's legal position that Bruscato failed to comply with section 7-10 by not specifying that he had an Illinois law license. The correction affected only the relief sought, namely, preclusion of Bruscato from the particular ballot to which he sought access (which plaintiff misidentified). Thus, in a broad sense, plaintiff's amendment would not have presented a "new objection," but that phrase must be understood together with the remainder of *Siegel*'s holding. As we interpret *Siegel*, the respondents' response to the petitioner's motion to strike and dismiss was the same (and not a "new") objection *just because* it was a refinement of their original position. We refuse to import any broader meaning into what does or does not constitute a "new objection." Plaintiff essentially would have us divorce that term from its context and hold that any amendment that is *de minimis*–and as such would not alter the ultimate legal grounds of an objection– does not pose a "new objection." Such expansion would potentially swallow the rule articulated in *Siegel* and other cases (and based in section 10-8 of the Election Code) that amendments to objectors' petitions are not allowed after the time for filing objections has passed. As this case is manifestly unlike *Siegel*, we hold that the Board was correct to deny the motion to amend.

¶ 17        Notably, though the Board overlooked as *de minimis* plaintiff's misidentification of the ballot to which Bruscato sought access, plaintiff does not ask us to do the same, but rests solely on the contention that the amendment should have been allowed. Therefore, the sole question remaining is whether the trial court should have stricken the petition against Bruscato. Here, too, plaintiff offers no argument that, even if the amendment was rightfully disallowed, the court still erred in striking the petition. We hold that, since the petition sought nonsensical relief, it was properly stricken.

¶ 18        We now reach the merits of whether the petition against Gill was properly denied. Before we can even explain the proper standard of review, we must set forth the relevant portions of section 7-10, which is the provision of the Election Code governing the form and content of nominating petitions. Section 7-10 contains a lengthy paragraph addressing specifically the statement of candidacy that must be included in each petition for nomination. The first part of the paragraph enumerates the content that must be included in the statement of candidacy. It reads in relevant part:

> "[The statement of candidacy] shall state that the candidate is a qualified primary voter of the party to which the petition relates and is qualified for the office specified (*in the case of a candidate for State's Attorney it shall state that the candidate is at the time of filing such statement a licensed attorney-at-law of this State*), shall state that he has filed (or will file before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics Act, shall request that the candidate's name be placed upon the official ballot, and shall be subscribed and sworn to by such candidate before some officer authorized to take acknowledgment of deeds

in the State and shall be in substantially the following form:" (Emphasis added.) 10 ILCS 5/7-10 (West 2010).

¶ 19   Following the colon is a precise and comprehensive model form for the statement of candidacy. For our purposes here, we quote only its body:

"I, . . . ., being first duly sworn, say that I reside at . . . . Street in the city (or village) of . . . ., in the county of . . . ., State of Illinois; that I am a qualified voter therein and am a qualified primary voter of the . . . . party; that I am a candidate for nomination (for election in the case of committeeman and delegates and alternate delegates) to the office of . . . . to be voted upon at the primary election to be held on (insert date); *that I am legally qualified (including being the holder of any license that may be an eligibility requirement for the office I seek the nomination for)* to hold such office and that I have filed (or I will file before the close of the petition filing period) a statement of economic interests as required by the Illinois Governmental Ethics Act and I hereby request that my name be printed upon the official primary ballot for nomination for (or election to in the case of committeemen and delegates and alternate delegates) such office." (Emphasis added.) 10 ILCS 5/7-10 (West 2010).

For convenience, we refer to the main paragraph as the "enumeration paragraph" and the inset paragraph, including the introductory phrase, "shall be in substantially the following form," as the "form paragraph."

¶ 20   We turn to the issue of standard of review. Recently, in *Goodman v. Ward*, 241 Ill. 2d 398, 405-06 (2011), the supreme court described the standards of review that govern appeals from the decisions of electoral boards:

"As in other administrative review cases, the standard of review we apply to an election board's decision depends on what is in dispute, the facts, the law, or a mixed question of fact and law. [Citation.] ***

Our court has held that where the historical facts are admitted or established, the controlling rule of law is undisputed and the issue is whether the facts satisfy the statutory standard, the case presents a mixed question of fact and law for which the standard of review is 'clearly erroneous.' [Citation.] We have also held, however, that where the historical facts are admitted or established, but there is a dispute as to whether the governing legal provisions were interpreted correctly by the administrative body, the case presents a purely legal question for which our review is *de novo*. [Citation.]"

¶ 21   Gill argues that the "clearly erroneous" standard applies because this case involves the application of law to facts (even if those facts are undisputed). We agree with plaintiff that *de novo* is the appropriate standard. The issue the parties present is whether Gill was bound to state expressly that he has an Illinois law license, as suggested by the enumeration paragraph, or whether it was acceptable for him to adopt the form paragraph's general representation that the candidate possesses any licenses required for the office for which he seeks nomination. The statement of licensure in Gill's statement of candidacy (reproduced at ¶ 4 *supra*) is identical to the emphasized sentence in the form paragraph (reproduced at ¶ 19 *supra*) except that Gill's prepositional phrase at the end reads "for the office for which I seek the nomination" rather than "for the office I seek the nomination for." Since Gill's

statement of candidacy mirrors, with immaterial exceptions, the relevant language of the form paragraph, the issue is, in essence, how to harmonize the enumeration paragraph with the form paragraph. This is an issue of statutory construction subject to *de novo* review.

¶ 22    In interpreting a statute, a court's primary goal is to ascertain the intent of the legislature. *Land v. Board of Education*, 202 Ill. 2d 414, 421 (2002). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Id.*

¶ 23    Both the enumeration paragraph and the form paragraph couch their directives in the imperative "shall." As we noted in *Siegel*, "[l]egislative directives containing the word 'shall' are typically interpreted to be mandatory." *Siegel*, 385 Ill. App. 3d at 458. The difficulty is that compliance with the form paragraph appears to be as mandatory as compliance with the enumeration paragraph. Here two canons of statutory interpretation appear to have some bearing: first, "[e]ach word, clause and sentence of a statute should be given reasonable meaning and not rendered superfluous" (*People ex rel. Department of Labor v. Sackville Construction, Inc.*, 402 Ill. App. 3d 195, 198 (2010)) and, second, "the specific controls the general" (*People v. Arnhold*, 359 Ill. App. 3d 857, 861 (2005)). Neither of them clearly resolves the issue, however. First, each paragraph is more general in some respects, yet more specific in other respects, than the other. For instance, the form paragraph is itself a specific model of a statement of candidacy. On the other hand, while the form paragraph contains a general representation that the candidate holds "any license that may be an eligibility requirement," the enumeration paragraph requires that a candidate for State's Attorney specifically state that he holds an Illinois law license. However, aside from the case of a candidate for State's Attorney, the form paragraph actually requires more specificity in the way of qualifications, for it requires the candidate to affirm not only that he is "legally qualified" but also that he holds "any license that may be an eligibility requirement," while the enumeration paragraph requires only that the candidate state that he is "qualified."

¶ 24    The canon requiring that statutory provisions not be rendered superfluous would seem to counsel against disregarding the enumeration paragraph's requirement that the candidate expressly affirm that he has an Illinois law license. Certainly, if the enumeration paragraph required a candidate for State's Attorney to state that he holds all required licenses *and* that he holds an Illinois law license, we would find it difficult to accept that a candidate could dispense with the specific representation and find safe haven in the general language of the form paragraph. In that case, it would seem undeniable that the legislature truly wanted both the general and the specific in the case of a candidate for State's Attorney. The enumeration paragraph, however, does not require a general averment of licensure, but the form paragraph does. The canon equally counsels us not to render the requirement of a catch-all averment superfluous. When ascribed the meaning that context requires, the requirement of a general averment of licensure emerges as a proxy for the specific representation that the candidate holds an Illinois law license (and whatever other licenses are required under the election laws).

¶ 25    These two canons are not, however, the only ones at our disposal. There is another principle that is better suited to this situation. It was described and applied in *Madden v. Schumann*, 105 Ill. App. 3d 900 (1982). In *Madden*, the appellate court noted conflicting

directives within section 7-10 concerning the oath of the circulator of petitions. The court observed that section 7-10's model form for the circulator's affidavit required the circulator to swear that he is a registered voter, while the enumeration of contents for the affidavit (set forth in a separate paragraph) simply required that the circulator's oath be signed by a registered voter. *Id.* at 901-02 (citing Ill. Ann. Stat., ch. 46, ¶ 7-10 (Smith-Hurd Supp. 1981-1982)). Included in the respondent's nominating papers was a circulator's affidavit sworn by him. There was no dispute that the respondent was a registered voter, but his circulator's oath did not certify that he was. This court held that the circulator's affidavit was in compliance with section 7-10 though it did not track the requirements of the model form. The court said:

> "It appears to us that if the provisions of section 7-10 are mandatory, then an obvious ambiguity exists between the two sets of directions for the circulator's oath. In such cases, the court will not construe a statute against a person who correctly follows one set of directives while deviating from [another]." *Id.* at 902.

¶ 26   The case at hand highlights another deviation within section 7-10, *i.e.*, between the list of required content for the statement of candidacy and the model form for the statement. Gill, facing mandatory but competing directives, complied with one over the other. This was sufficient compliance with section 7-10.

¶ 27   Plaintiff cites three cases: *DeFabio v. Gummersheimer*, 192 Ill. 2d 63 (2000), *Siegel*, and *In re Objection of McSparin*, 352 Ill. App. 3d 352 (2004). In each of these cases, the candidate either omitted required content or provided inaccurate content. See *DeFabio*, 192 Ill. 2d at 67-69 (failure to initial ballots); *Siegel*, 385 Ill. App. 3d at 460 (incorrect date of selection); *McSparin*, 352 Ill. App. 3d at 356-57 (omitted date of selection). Here, Gill did not omit content or provide inaccurate content, but rather made a broader representation on the issue of licensure than was prescribed in the enumeration paragraph. More importantly, however, neither *DeFabio*, *Siegel*, nor *McSparin* involved a set of conflicting directives. We acknowledge that the candidate in *McSparin* relied, to no avail, on a form from the State Board of Elections that did not include a space for the date of selection. See *McSparin*, 352 Ill. App. 3d at 361 (Kuehn, J., specially concurring). The crucial difference is that the form in *McSparin* was not prescribed in the Election Code itself as was the form that Gill adopted.

¶ 28   For the foregoing reasons, we affirm the judgment of the circuit court of Winnebago County (1) reversing the judgment of the Board denying Bruscato's motion to strike the objector's petition against him; and (2) affirming the Board's denial on the merits of the objector's petition against Gill.

¶ 29   Affirmed.